UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY ZAPPIN,

                Plaintiff,

-against-                              No. 16-CV-8762 (KPF)

DAILY NEWS, L.P.,
d/b/a THE DAILY NEWS,

                Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DAILY NEWS' MOTION TO DISMISS

DAILY NEWS, L.P.
Matthew A. Leish
Deputy General Counsel
4 New York Plaza, 7th Floor
New York, NY 10004
212-210-2144

*Attorneys for Daily News, L.P.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

The Sanctions Decision ................................................................................................ 2

The First Department's Affirmance ............................................................................. 3

The November 10, 2015 Hearing ................................................................................. 4

The Daily News Article ............................................................................................... 7

The Amended Complaint in This Action ..................................................................... 8

ARGUMENT ................................................................................................................ 10

I. The Article Is Absolutely Privileged as a Fair Report of a Judicial Proceeding ........................ 10

    A.  The Privilege Applies to Reports of Public Matrimonial Proceedings ........................... 12

    B.  Each of the Allegedly False Statements Is Substantially Accurate ............................... 15

    C.  The Article As A Whole Is Substantially Accurate ...................................................... 19

II. The Complaint Must Be Dismissed Because The Challenged Statements Are Not Substantially False ............................................................................................... 21

CONCLUSION ............................................................................................................. 23

i

# TABLE OF AUTHORITIES

**Cases**

Akpinar v. Moran, 83 A.D.3d 458, 922 N.Y.S.2d 8 (1st Dep't 2011) ............................................. 10

Alexander v. Daily News L.P., 2013 WL 6651481 (Sup. Ct. N.Y. Co. January 15, 2013) ......... 18

Alf v. Buffalo News, Inc., 100 A.D.3d 1487, 953 N.Y.S.2d 797 (4th Dep't 2012) ..................... 20

Beary v. West Pub. Co., 763 F.2d 66 (2d Cir. 1985) ................................................................... 10

Becher v. Troy Publishing Co., 183 A.D.2d 230, 589 N.Y.S.2d 644 (3d Dep't 1992) ............... 11

Biro v. Conde Nast, 883 F.Supp.2d 441 (S.D.N.Y. 2012) ..................................................... 10, 11

Brannon v. Mills, 89 A.D.3d 536, 932 N.Y.S.2d 483 (1st Dep't 2011) ........................................ 22

Buechel v. Bain, 97 N.Y.2d 295, 740 N.Y.S.2d 252 (2001) ....................................................... 22

Camperlengo v. Barell, 78 N.Y.2d 674, 578 N.Y.S.2d 504 (1991) ............................................. 22

Choi v. State, 74 N.Y.2d 933, 550 N.Y.S.2d 267 (1989) ............................................................ 22

Cholowsky v. Civiletti, 69 A.D.3d 110, 887 N.Y.S.2d 592 (2d Dep't 2009) ......................... 10, 20

Conopco Inc. v. Roll, Int'l, 231 F.3d 82 (2d Cir. 2000) ............................................................... 22

Constantine v. Teachers College, 94 A.D.3d 493, 940 N.Y.S.2d 75 (1st Dep't 2012) ................... 22

Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 630 N.Y.S.2d 18 (1st Dep't
    1995) ...................................................................................................................................... 11

Danziger v. Hearst Corp., 304 N.Y. 244, 107 N.E.2d 62 (1952) ................................................. 13

Freihofer v. Hearst Corp., 65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985) ........................................ 14

Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F.Supp.2d 405 (S.D.N.Y. 2009) .......................... 10

Glantz v. Cook United, Inc., 499 F. Supp. 710 (E.D.N.Y. 1979) ................................................. 11

Glendora v. Gannett Suburban Newspapers, 201 A.D.2d 620, 608 N.Y.S.2d 239 (2d
    Dep't 1994) ............................................................................................................................ 20

Gonzalez v. Gray, 69 F. Supp.2d 561 (S.D.N.Y. 1999) .............................................................. 10

Goel v. Bunge, Inc., 820 F.3d 554 (2d Cir. 2016) .................................................................... 2, 4

Guccione v. Hustler Magazine, Inc., 800 F.2d 298 (2d Cir.1986) ............................................... 21

ii

Holy Spirit Ass'n for the Unification of World Christianity v. New York Times Co.,
49 N.Y.2d 63, 424 N.Y.S.2d 165 (1979) ............................................... 10, 11, 17, 20

Idema v. Wager, 120 F. Supp.2d 361 (S.D.N.Y. 2000) ................................................ 10

Jewell v. NYP Holdings, Inc., 23 F.Supp.2d 348 (S.D.N.Y.1998).............................. 21

Karedes v. Ackerly Group, Inc., 423 F.3d 107 (2005) ........................................ 11, 17

Komarov v. Advance Magazine Publishers, Inc., 180 Misc. 2d 658, 691 N.Y.S.2d 298,
(Sup. Ct. N.Y. Co. 1999) ........................................................................... 17-18

Lan Sang v. Ming Hai, 951 F.Supp.2d 504 (S.D.N.Y. 2013) ...................................... 11

Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., 844 F.2d 955 (2d Cir. 1988) ........... 21

Masson v. New Yorker Magazine, Inc., 501 U.S. 496 (1991)...................................... 21

Matter of New York Post Corp. v. Leibowitz, 2 N.Y.2d 677, 163 N.Y.S.2d 409 (1957) ........... 13

McDonald v. E. Hampton Star, 10 A.D.3d 639, 781 N.Y.S.2d 694 (2d Dep't 2004) ........... 10, 20

Misek-Falloff v. American Lawyer Media, Inc., 300 A.D.2d 215, 752 N.Y.S.2d 647 (1st
Dep't 2002) ............................................................................................... 22

Mosdos Chofetz Chaim v. Village of Wesley Hills, 815 F.Supp.2d 679 (S.D.N.Y. 2011)............ 2

Munno v. Town of Orangetown, 391 F. Supp.2d 263 (S.D.N.Y. 2005)......................................... 2

Posner v. New York Law Pub. Co., 228 A.D.2d 318, 644 N.Y.S.2d 227 (1st Dep't 1996)......... 11

Proctor & Gamble Co. v. Quality King Distributors, 974 F. Supp. 190 (E.D.N.Y. 1997) ........... 10

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)................................................................. 2

Saleh v. New York Post, 78 A.D.3d 1149, 915 N.Y.S.2d 571 (2d Dep't 2010) .............................. 10

Schulz v. Williams, 44 F.3d 48 (2d Cir. 1994) ............................................................ 22

Shiles v. News Syndicate Co., 7 N.Y.2d 9, 313 N.Y.S.2d 104 (1970)...................... 12, 13, 14, 15

Stevenson v. News Syndicate Co., 276. A.D. 614, 96 N.Y.S.2d 751 (2d Dep't 1950)............... 13

Stuart v. Press Pub. Co., 83 A.D. 467, 82 N.Y.S. 401 (1st Dep't 1903) ...................................... 14

Tacopina v. O'Keeffe, 2015 WL 5178405 (S.D.N.Y. Sept. 4, 2015)..................................... 10, 17

Zappin v. Comfort, 2015 N.Y. Slip. Op. 51339(U), 49 Misc.3d 1201(A) (Sup. Ct. N.Y.
Co. Sept. 18, 2015) ........................................................................................2-3, 15

Zappin v. Comfort, ___ N.Y.S.3d ___, 146 A.D.2d 575, 2017 WL 160946 (1st Dep't 2017).........3-4

**Other Authorities**

N.Y. Civil Rights. L. § 74 ................................................................................................... *passim*

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................... 1

N.Y. Domestic Relations Law §235 ............................................................................. 12, 13, 14

N.Y. Judiciary Law §4 ................................................................................................. 12-13, 14

Defendant Daily News, L.P. ("the Daily News") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. Proc. 12(b)(6) to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

This defamation case arises from plaintiff Anthony Zappin's unhappiness with the outcome of his divorce proceedings in New York Supreme Court and with the Daily News' coverage of those proceedings. Zappin alleges that the Daily News defamed him, allegedly as part of a conspiracy with Justice Matthew Cooper (who is the defendant in a separate lawsuit by Zappin pending in this Court), in an article bearing the headline "Lawyer fined $10,000 for misusing legal license 'feigned an assault' in courtroom, judge says" ("the Article"). The Article reported on a November 10, 2015 hearing before Justice Cooper which involved an inquiry into an incident in which Zappin had claimed that he was physically assaulted in court by a 69-year-old court-appointed attorney for his child. As the Article accurately reported, Justice Cooper concluded at the hearing that Zappin had "feign[ed]" and "fabricated" the alleged assault.

Zappin's claims against the Daily News fail as a matter of law for two independent reasons. First, the Article is absolutely privileged as a fair and true report of a judicial proceeding under §74 of the New York Civil Rights Law. Contrary to Zappin's position, §74 fully applies to reports of marital proceedings where, as here, those proceedings were open to the public. Second, even if the privilege somehow did not apply, the Article also is not actionable for the separate reason that the allegedly defamatory statements are substantially true.

## STATEMENT OF FACTS

Zappin's claims in this action arise out of the Daily News' reporting on his divorce proceeding, Zappin v. Comfort (Sup. Ct. N.Y. Co. No. 301568). While the claims against the

1

Daily News primarily relate to the November 10 hearing, two allegedly defamatory statements are based on an earlier decision issued by Justice Cooper on September 18, 2015 in which he imposed sanctions on Zappin. Zappin v. Comfort, 2015 N.Y. Slip. Op. 51339(U), 49 Misc.3d 1201(A) (Sup. Ct. N.Y. Co. Sept. 18, 2015) ("the Sanctions Decision").

**The Sanctions Decision**

In the Sanctions Decision, Justice Cooper imposed sanctions on Zappin in the amount of $10,000 after finding that Zappin had engaged in a "maelstrom of misconduct" and had "done everything in his power to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate." See Sanctions Decision, annexed as Ex. B to Affidavit of Barbara Ross ("Ross Aff.") submitted herewith, at 7, 3.[1]

The Sanctions Decision includes a number of statements that are directly relevant to Zappin's claims against the Daily News in this case.[2] In particular, in the Sanctions Decision,

---

[1] The Court may take judicial notice of the Sanctions Decision on this motion to dismiss without converting it to a motion for summary judgment. See, e.g., Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (court may consider "matters of which judicial notice may be taken" on a 12(b)(6) motion); Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (judicial notice taken of pleadings in another case on 12(b)(6) motion); Munno v. Town of Orangetown, 391 F. Supp.2d 263, 268-69 (S.D.N.Y. 2005) (same); Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F.Supp.2d 679, 691 (S.D.N.Y. 2011) (court may take judicial notice of "decisions or pleadings from other court actions" on 12(b)(6) motion).

[2] Zappin also has commenced a separate lawsuit in New York Supreme Court against the Daily News and the New York Post arising out of both newspapers' reporting on the Sanctions Decision. Zappin v. NYP Holdings Inc., et al., No. 162911/2015 (Sup. Ct. N.Y. Co.). Defendants' motion to dismiss that case on fair report and other grounds is pending. Zappin has also sued various other participants in his divorce case, including Justice Matthew Cooper (Zappin v. Cooper, No. 1:16-cv-05985 (S.D.N.Y.) (KPF)); his own former counsel (Zappin v. Aronson Mayefsky & Sloan LLP, No. 1:16-07417 (S.D.N.Y.) (LGS) and Zappin v. Aronson Mayefsky & Sloan LLP, No. 158501/2015 (Sup. Ct. N.Y. Co.)); his ex-wife's counsel (Zappin v. Wallack, No. 160217/2014 (Sup. Ct. N.Y. Co.)); and the State of New York in connection with his allegation that a court officer physically assaulted him at the direction of another judge (Zappin v. State, No. 126063/2015 (N.Y. Court of Claims)).

Justice Cooper criticized Zappin's conduct towards two prior judges ("[t]here is little question that the manner in which plaintiff spoke to Justice Kaplan, or, for that matter, what he wrote to Judge Epstein in the District of Columbia proceeding, constitutes a breach of the Rules of Professional Conduct") (id. at 4); towards opposing counsel ("[r]egrettably, plaintiff has treated his opposing counsel [] in the same offensive and patently improper manner" including sending counsel "taunting emails referring to [his] personal life and relationships") (id. at 8-9); towards the court-appointed attorney for the child ("he has actively campaigned to impugn her reputation in the public forum . . . those efforts have extended to tactics designed to extort, bully, and intimidate") (id at 9-10); and towards a court-appointed psychiatric expert (Zappin's "most troubling action taken to date" was filing a "reckless and dishonest" complaint with the Office of Professional Medical Conduct accusing the psychiatrist of misconduct, negligence, and fraud, thereby "go[ing] beyond the pale by cynically and maliciously interfering with a physician's most valuable asset: his license to practice medicine") (id. at 12-13).

Although Zappin contends that the Sanctions Decision is "statutorily sealed" and alleges that Justice Cooper engaged in "extrajudicial conduct" by disseminating it (Am. Compl. ¶11), the Sanctions Decision in fact was published on the New York Official Reports website of the New York State Law Reporting Bureau and remains available there. See Ross Aff. ¶5.[3]

**The First Department's Affirmance**

On January 17, 2017, the First Department unanimously affirmed the Sanctions Decision. Zappin v. Comfort, ___ N.Y.S.3d ___, 146 A.D.2d 575, 2017 WL 160946 (1st Dep't Jan. 17,

---

[3] Zappin claims that Justice Cooper sent the Sanctions Decision to the Daily News (Am. Compl. ¶11). While that assertion is not true, the Daily News cannot disprove it at this stage of the proceedings without submitting extrinsic evidence beyond what the Court may consider on a motion to dismiss. However, even if Justice Cooper had sent the Sanctions Decision to the Daily News, that would have no bearing on the Daily News' arguments for dismissal.

3

2017). The court held that Justice Cooper's decision "is amply supported by the record, and [Zappin] does not advance any meritorious argument that his conduct was not frivolous or in bad faith, or not designed to 'harass or maliciously injure another' such that his conduct should not be sanctioned." Id. at *1. The court further held that "the record establishes that [Zappin] engaged in unprofessional, outrageous and malicious conduct on multiple occasions" and "exhibited a pattern of bad faith conduct throughout the proceedings despite repeated warnings not to do so." Id. Finally, the court rejected Zappin's argument that he did not have fair notice that sanctions were being considered against him. Id.

Like the Sanctions Decision itself, the First Department's decision on appeal was published and remains publicly available. Id.

**The November 10, 2015 Hearing**

On November 10, 2015, Justice Cooper conducted a hearing in Zappin v. Comfort. Am. Compl. ¶16.[4] As reflected in the hearing transcript,[5] Justice Cooper began the hearing by stating that he needed to "deal with a troubling incident that occurred in this courtroom" on November 6. Am. Compl. Ex. 6 (Transcript) at 4:4-7. Justice Cooper stated that, on that date, he had been

---

[4] Zappin contends that the hearing was not placed on the public eCourts calendar in advance and that the Daily News was "tipped off" to the hearing by Justice Cooper and his clerk Timothy Corbo. Am. Compl. ¶¶16, 19. The Daily News denies both assertions, and should the case survive this Motion, the Daily News will demonstrate that both assertions are false. Once again, however, the Court need not address the validity of Zappin's contentions on this motion since they have no bearing on the legal grounds for dismissal.

[5] While the Court had indicated at the January 19, 2017 hearing in this matter that the Daily News should not publicly file the complete transcript of the November 10 hearing in this case, Zappin proceeded to attach the entire transcript as Exhibit 6 to his publicly-filed Amended Complaint. Doc. No. 23. The Court may consider the transcript on this motion because it is a judicial document of which the Court may take judicial notice, because it is a document "appended to the complaint," and because it is "integral" to Zappin's claims. Goel, supra.

informed by a court officer that as the attorneys for the parties were reviewing various documents together, "Zappin had ended up on the courtroom floor claiming that he had been assaulted by attorney [for the child] Paul Kurland." Tr. 5:11-15. Justice Cooper then stated that "[b]ecause it is my duty to find out what indeed occurred, I will be calling the three court witnesses to the stand to tell me what they saw and heard. All sides will have an opportunity to cross-examine the witnesses . . . Both Mr. Zappin and Mr. Kurland may also take the stand if they so desire." Tr. 7:3-8.

The three court witnesses called to the stand proceeded to testify that Kurland did not, in fact, assault Zappin. Specifically, the witnesses testified as follows:

- Court Officer Michael Donlan testified that he "witnessed [Zappin] jumping on the floor . . . and then he started yelling to one of the other attorneys I'm going to sue him for elbowing him." Tr. 8:10-16. Donlan added that "at no time did I see anybody throw an elbow . . . it's possible they brushed but there was no way there was an elbow ever thrown." Tr. 8:23-9:2. On cross-examination by Zappin, Donlan reiterated that "I don't think there was even a brush" but that "I am very certain" there was no elbow thrown. Tr. 11:23-12:5.

- Senior Court Reporter Jackie Glass testified that she witnessed Zappin "go up in the air a little bit and over to the left and fell on the floor . . . it seemed like he lifted himself up in the air and he hurled himself to the left of the desk." Tr. 15:6-15. Glass testified that Zappin then said "officer, officer, that man assaulted me. Arrest him." Tr. 15:17-18. She added that she "saw no contact" between Zappin and Kurland. Tr. 15:25. On cross-examination by Zappin, she confirmed that she "didn't see [Kurland] do anything like this or push or shove." Tr. 18:18-19.

- Senior Court Clerk Charlotte Williams testified that she saw Zappin "grasping his chest as he came around to the front of the table blaring out the words he stabbed me . . . He fell to the ground. I would say throw himself on the ground because that's what it appeared, but anyway, he's yelling he stabbed me with his elbow." Tr. 22:23-23:4. Williams added that "Mr. Kurland was if not more than two feet away but apart enough that nothing and no one made any contact" and that she did not see Kurland touch Zappin in any way. Tr. 22:13-16. On cross-examination by Zappin, Williams reiterated that Zappin and Kurland "never made contact." Tr. 23: 23. Finally, on cross-examination by counsel for Zappin's former wife, Williams stated that while Zappin was on the floor he stated that he "wanted [Kurland] arrested" and that "[w]hen he got up he pointed directly at him that he was going to sue him." Tr. 26:15-17.

Following the testimony of the witnesses, Zappin attempted to call his attorney David Schorr to testify, but Justice Cooper refused to let him do so, stating that "I'm not calling any of the other attorneys.  That will disqualify them."  Tr. 27:19-28:8.  Zappin then took the stand and gave his version of events, testifying that Kurland had "grabbed [the documents] out of my hands and shoved me and his elbow made contact with my rib in my back [] where my back was sort of tender from having a procedure the night before . . . ."  Tr. 30:13-16.  Zappin then stated that "[a]s soon as he grabbed the documents and elbowed me I said he's assaulting me and then I fell to the ground because my back was in so much pain and I said he assaulted me, he assaulted me and then when I got up I asked the court officer to intervene and arrest him."  Tr. 31:20-24.  Zappin denied ever accusing Kurland of "stabbing" him, but he was not asked if he ever accused Kurland of stabbing him <u>with his elbow</u>.  Tr. 31:25-32:5.  He then reiterated that Kurland had "ripped [the papers] out of my hands and shoved me."  Tr. 32:11-12.

Justice Cooper then asked Kurland if he would like to testify, but he and his co-counsel Ms. Cohen stated that was not necessary.  Tr. 42:13-17.  There is no indication in the transcript that Zappin ever asked to question Kurland.

At that point, with testimony completed, Justice Cooper stated as follows:

[I]n a case that is already bizarre, this gets more bizarre . . . The credible testimony of three non-interested witnesses court employees is that there was no contact.  If there was it was the most minimal contact possible, and the fact that Mr. Zappin would rise and then be shouting things to the extent arrest this man for assault, that he would be saying I'm going to sue you . . . the idea this would happen is mind-boggling.

Mr. Zappin's behavior, at the very least, in this incident is bizarre and reflective of a person whose actions are out of control.  At worst, it borders on totally improper, perhaps criminal.  His actions disrupted the work of this Court. . .

This fanciful, I don't think there is any other word for it, conspiracy theory by Mr. Zappin . . . calls to question the Plaintiff's ability to tell the difference between true and false, fact and fiction, appropriate and inappropriate.  Those are my

findings. . . .

Tr. 42:18-44:7.

Justice Cooper later made the following statement:

So, he would feign an assault, would fabricate an assault why would anyone want to be with him.  How could I ask the attorneys to be in the same room when what is going to happen there will be allegations made, attacks made against them that are fabricated.

Tr. 47:4-8.

Finally, following a back-and-forth exchange between Zappin and Justice Cooper in which Zappin accused Justice Cooper of "making false statements" (Tr. 50:10), Zappin told Justice Cooper "You destroyed my career.  You did it intentionally. You published your [sanctions] decision to destroy me."  Tr. 50:24-26.  Justice Cooper replied that "if anybody destroyed your career, sir, it was you and you alone. . . ."  Tr. 51:2-4.  At one point, the exchange grew so heated that it appears the court officer moved to restrain Zappin.  Tr. 51:8-12 ("THE COURT: You cannot control yourself, can you.  MR. ZAPPIN: I'm controlling myself.  THE COURT: You are not controlling . . . MR. ZAPPIN: The court officer doesn't have to restrain me.  I'm sitting here.")

**The Daily News Article**

On the evening of November 10, 2015, the Daily News published a short article by Barbara Ross bearing the headline "Lawyer fined $10,000 for misusing legal license 'feigned an assault' in courtroom, judge says."  A copy of the Article is annexed as Ex. 5 to the Amended Complaint; a copy is also annexed as Ex. A to the Ross Affidavit.  The Article reads, in its entirety, as follows:

A Manhattan judge who had fined a lawyer $10,000 for misusing his legal license during a divorce and custody proceeding said Tuesday that the case had gotten even more 'bizarre' after the attorney 'feigned an assault' in his courtroom.

7

Anthony Zappin, 30, testified that Paul Kurland, 69, had "stabbed" him in the ribs with his elbow as the two wrestled over potential court exhibits – leaving Zappin sprawled on the floor in the courtroom of Manhattan matrimonial judge Matthew Cooper.

However, three court employees standing a few feet away – senior clerk Charlotte Williams, court officer Michael Donlon, and court reporter Jackie Glass – testified that they saw no assault.

"In a case that is already bizarre, this gets more bizarre," Cooper told Zappin.

Zappin – jabbing his finger in the air and shouting – told Cooper he was "making false statements . . . You destroyed my career and you did it intentionally."

Zappin was referring to Cooper's 15-page ruling in which the judge fined him and accused him of misusing his legal license to attack judges, opposing attorneys and court experts.

"If anybody destroyed your career, sir, it's you and you alone," Cooper responded.

Ross Aff. Ex. A.

## The Amended Complaint in this Action

On January 23, 2017, Zappin filed his Amended Complaint against the Daily News. The Amended Complaint begins with a lengthy description of alleged misconduct by Justice Deborah Kaplan and Justice Cooper in Zappin's divorce proceeding. Am. Compl. ¶¶ 6-10. The Amended Complaint then alleges that Justice Cooper "engaged in extrajudicial conduct" by publishing and disseminating the Sanctions Decision and that he "sent the statutorily sealed Sanctions Decision to several news outlets, including Barbara Ross a reporter at the Daily News. . . ." Am. Compl. ¶ 11. The Amended Complaint next describes the alleged November 6 incident involving Mr. Kurland (Am. Compl. ¶¶13-15) and the subsequent November 10 hearing. Am. Compl. ¶¶16-22.

Turning to the Daily News Article, the Amended Complaint alleges that the Article contains the following false and defamatory statements:

8

- "The Daily News wrote that Plaintiff 'feigned an assault in courtroom.'" Am.
  Compl. ¶24.  (In fact, the Article states that "A Manhattan judge . . . said Tuesday
  that the case had gotten even more 'bizarre' after the attorney 'feigned an assault'
  in his courtroom.")

- "The Daily News wrote that Plaintiff [] 'misus[ed] [his] legal license.'"  Am.
  Compl. ¶25.  (In fact, the Article states that "A Manhattan judge who had fined a
  lawyer $10,000 for misusing his legal license during a divorce and custody
  proceeding . . . .")

- "The Daily News wrote that 'Anthony Zappin, 30, testified that Paul Kurland, 69,
  had 'stabbed' him in the ribs . . .'" Am. Compl. ¶26.  (In fact, the Article states
  that "Anthony Zappin, 30, testified that Paul Kurland, 69, had "stabbed" him in
  the ribs with his elbow . . .")

- "The Daily News wrote that 'Zappin – jabbing his finger in the air and shouting
  . . .'" Am. Compl. ¶27.

- "The Daily News wrote that Plaintiff 'misus[ed] his legal license to attack judges,
  opposing attorneys and court experts." Am. Compl. ¶28.  (In fact, the Article
  states that "Zappin was referring to Cooper's 15-page ruling in which the judge
  fined him and accused him of misusing his legal license to attack judges,
  opposing attorneys and court experts.")

Finally, the Amended Complaint asserts that the Article is not a "fair and accurate" report
for purposes of the Fair Report privilege because the Daily News allegedly "misrepresented
Plaintiff's testimony in a defamatory manner" and because the Daily News allegedly "failed to
report that Plaintiff was not provided notice of the impromptu hearing.  It further failed to report

9

that Plaintiff was denied an opportunity to present evidence (as a result of the lack of notice), call witnesses in his defense and cross-examine Mr. Kurland." Am. Compl. ¶31.

## ARGUMENT

### I.    The Article Is Absolutely Privileged as a Fair Report of a Judicial Proceeding

Under the law of New York, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding. . . ." New York Civil Rights Law § 74.  On its face, the statute "confers an absolute immunity, regardless of proof of malice or negligence. . . ." Beary v. West Pub. Co., 763 F.2d 66, 68 (2d Cir. 1985); Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) ("The section 74 privilege is absolute and is not defeated by allegations of malice or bad faith"). The applicability of the privilege is a question for this Court to decide as a matter of law by comparing the statements in suit with the judicial documents on which the articles report.  See, e.g., Holy Spirit Ass'n for the Unification of World Christianity v. New York Times Co., 49 N.Y.2d 63, 65-68, 424 N.Y.S.2d 165, 166-68 (1979); McDonald v. East Hampton Star, 10 A.D.3d 639, 781 N.Y.S.2d 694, 695-96 (2d Dep't 2004).[6]

The § 74 privilege is intended to protect and foster news reporting on the charges and allegations made in judicial proceedings regardless of whether those underlying allegations are in fact true or false, since legal proceedings are by their very nature often typified by conflicting

---

[6] Courts applying New York law routinely grant and affirm pre-discovery dismissals on the ground that the statements are covered by the fair report privilege.  See, e.g., Tacopina v. O'Keeffe, 2015 WL 5178405 (S.D.N.Y. Sept. 4, 2015), aff'd, 645 Fed. Appx. 7 (2d Cir. 2016); Biro v. Conde Nast, 883 F.Supp.2d 441, 479 (S.D.N.Y. 2012); Idema v. Wager, 120 F. Supp.2d 361 (S.D.N.Y. 2000), aff'd, 29 Fed. Appx. 676  (2d Cir. 2002); Gonzalez v. Gray, 69 F. Supp.2d 561 (S.D.N.Y. 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000); Proctor & Gamble Co. v. Quality King Distributors, Inc., 974 F. Supp. 190 (E.D.N.Y. 1997); Akpinar v. Moran, 83 A.D.3d 458, 922 N.Y.S.2d 8 (1st Dep't 2011); Saleh v. New York Post, 78 A.D.3d 1149, 915 N.Y.S.2d 571 (2d Dep't 2010); Cholowsky v. Civiletti, 69 A.D.3d 110, 887 N.Y.S.2d 592 (2d Dep't 2009).

charges and countercharges. Biro, 883 F.Supp.2d at 479 (fact that plaintiff "disagrees with the allegations contained in the [underlying lawsuit] does not affect whether the statement is a fair and true report of the allegations it paraphrases"); Glantz v. Cook United, Inc., 499 F. Supp. 710, 715 (E.D.N.Y. 1979) ("encompassed within the privilege [of § 74] is the right to publish a 'fair and true' report which contains information that is 'false' as a matter of fact"), aff'd, 636 F.2d 1201 (2d Cir. 1980).

Crucially, in order to qualify as "fair and true" for purposes of the absolute privilege, a report need only be "substantially accurate." Karedes v. Ackerly Group, Inc., 423 F.3d 107, 119 (2005). "When determining whether an article constitutes a 'fair and true' report, the language therein should not be dissected and analyzed with a lexicographer's precision." Holy Spirit Ass'n, 49 N.Y.2d at 67-68, 424 N.Y.S.2d at 168 (citations omitted); see also Posner v. New York Law Publishing Co., 228 A.D.2d 318, 318, 644 N.Y.S.2d 227, 227 (1st Dep't 1996) (fact that a substantially accurate article about a court decision contained some inaccuracies did not remove it from the protection of the privilege accorded by § 74); Becher v. Troy Publishing Co., 183 A.D.2d 230, 233, 589 N.Y.S.2d 644, 646 (3d Dep't 1992) ("The case law has established a liberal interpretation of the 'fair and true report' standard of Civil Rights Law § 74 so as to provide broad protection to news accounts of judicial and other official proceedings").

Even where a report of a judicial proceeding contains errors, it will be found substantially accurate (and, hence, immunized under Section 74) so long as the errors would not create "a different effect on a reader than would a report containing the precise truth." Karedes, 423 F.3d at 119 (citations omitted); see also Lan Sang v. Ming Hai, 951 F.Supp.2d 504, 520 (S.D.N.Y. 2013) (same); Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 436, 630 N.Y.S.2d 18, 22 (1st Dep't 1995) (same).

A. **The Privilege Applies to Reports of Public Matrimonial Proceedings**

Zappin asserts that the fair report privilege does not apply to the Daily News Article, citing Shiles v. News Syndicate Co., 7 N.Y.2d 9, 313 N.Y.S.2d 104 (1970).  Am. Compl. ¶30. The Amended Complaint does not elaborate on this point, but Zappin has previously asserted in his state court litigation against the Daily News that, in his view, Shiles stands for the proposition that the fair report privilege does not apply to any report of a matrimonial proceeding.  Zappin's reading of Shiles is incorrect: Shiles applies only to reports of sealed matrimonial records, not to reports based on a journalist's personal observation of a matrimonial proceeding that was open to the public.  Accordingly, the privilege fully applies here.

Under New York law, certain records in matrimonial proceedings are presumptively sealed, but court proceedings in matrimonial actions are presumptively open to the public. Compare New York Domestic Relations Law Section 235(1) ("An officer of the court . . . or his clerk, either before or after the termination of the suit, shall not permit a copy of any of the pleadings, affidavits, findings of fact, conclusions of law, judgment of dissolution, written agreement of separation or memorandum thereof, or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party, except by order of the court") (emphasis added) with Domestic Relations Law Section 235(2) ("If the evidence on the trial of such an action or proceeding be such that public interest requires that the examination of the witnesses should not be public, the court or referee may exclude all persons from the room except the parties to the action and their counsel, and in such case may order the evidence, when filed with the clerk, sealed up . . .") (emphasis added); see also N.Y. Judiciary Law §4 ("The sittings of every court within this state shall be public, and every citizen may freely attend the same, except that in all proceedings and trials in cases for divorce . . . the court

12

may, in its discretion, exclude therefrom all persons who are not directly interested therein . . .")
(emphasis added).

In Shiles, the Court of Appeals was asked to determine whether the §74 privilege applied
to a report that discussed sealed files in a matrimonial proceeding.  The Court noted that Section
235 of the Domestic Relations Law prohibits the copying or inspection of the records of
matrimonial proceedings by non-parties, and that this "manifests a clear legislative design that
those proceedings be kept secret and confidential." Shiles, 313 N.Y.S.2d at 107.  The Court
concluded that "we do not believe that section 74 . . . . was ever intended to defeat this design by
extending to persons who, despite section 235, were able to obtain such records, the right to
publish and disseminate their contents without regard for their truth or falsity . . . ." Id.
(emphasis added); see also id. at 7 (the Legislature has "made it plain that . . . in the case of
papers filed in such actions the public interest is served not by publicizing them but by sealing
them . . . .")

While the Court goes on to state that "the privilege generally accorded to reports of
judicial proceedings is unavailable to reports of matrimonial actions" (id.), all of the cases the
Court cites for that proposition involved reports of sealed matrimonial records, not reports of
public matrimonial proceedings.  See Danziger v. Hearst Corp., 304 N.Y. 244, 107 N.E.2d 62
(1952); Stevenson v. News Syndicate Co., 276. A.D. 614, 96 N.Y.S.2d 751 (2d Dep't 1950);
Matter of New York Post Corp. v. Leibowitz, 2 N.Y.2d 677, 163 N.Y.S.2d 409 (1957) (not a
matrimonial case, but distinguishing between open court proceedings and sealed transcripts).

Indeed, one of the older cases cited in Shiles states explicitly that "[t]he cases cited and
many others show the distinction between the proceedings in open court . . . and the papers in the
action or proceeding, which merely concern the parties directly interested, except so far as the

13

validity of a judgment or other decree or process affecting property rights, in which third parties may be interested, may depend thereon." Stuart v. Press Pub. Co., 83 A.D. 467, 478, 82 N.Y.S. 401, 408 (1st Dep't 1903).

It thus is apparent that the Shiles decision is limited to cases in which the press reports on the contents of records sealed pursuant to Domestic Relations Law 235, and not to reports of matrimonial proceedings open to the public. Indeed, the Court of Appeals itself subsequently described Shiles as a case in which "this court held that one who had published and disseminated the contents of the records of matrimonial proceedings could not rely upon a defense of statutory privilege that the articles were fair and true reports of judicial proceedings." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 141, 490 N.Y.S.2d 735, 740 (1985) (emphasis added). And Shiles itself makes that clear it is only talking about situations where a party publishes details of a divorce proceeding "based on files obtained without a court order." Shiles, 27 N.Y.2d at 15, 313 N.Y.S.2d at 108.

Here, there is no dispute that the November 10 hearing was open to the public and that Justice Cooper did not exercise his discretion to close the hearing under Judiciary Law §4. Indeed, Zappin was aware that the hearing was open and that journalists were present, and he did not request that the hearing be closed. See November 10 hearing transcript at 34:22-25 ("THE COURT: I will ask you not to mention the child's name. I think there are press in the courtroom. THE WITNESS [Zappin]: Thank you, Your Honor. That's a good idea.") There is also no dispute that the Daily News' reporter, Barbara Ross, attended the November 10 hearing in person and wrote the Daily News Article based on her personal observations, and not based on any sealed transcript or documents. See Ross Aff. ¶¶3-4; see also Am. Compl. ¶20 ("At the November 10, 2015 hearing . . . Barbara Ross of *The Daily News* [was] present").

14

Accordingly, since the Daily News Article was a report of a public proceeding, <u>Shiles</u> does not apply and the fair report privilege is available to the Daily News.

### B.  <u>Each of the Allegedly False Statements Is Substantially Accurate</u>

Each of the allegedly false and defamatory statements identified in the Amended Complaint is substantially accurate, as is the Article as a whole.  Accordingly, the Article is privileged.

As an initial matter, the two statements in suit that relate to the Sanctions Decision are entirely accurate.  Zappin claims that he was defamed by the supposed statements that he "misus[ed] [his] legal license" and that he "misus[ed] his legal license to attack judges, opposing attorneys and court experts."  Am. Compl. ¶¶25, 28.  In fact, the actual statements in the Article are "A Manhattan judge who had fined a lawyer $10,000 for misusing his legal license during a divorce and custody proceeding . . . ." and "Zappin was referring to Cooper's 15-page ruling in which the judge fined him and accused him of misusing his legal license to attack judges, opposing attorneys and court experts."  Ross Aff. Ex. A.  These statements are entirely accurate descriptions of the Sanctions Decision.  In the Sanctions Decision, Justice Cooper held that Zappin had "done everything in his power to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate."  Ross Aff. Ex. B at 3.  Justice Cooper went on to detail examples of Zappin's conduct towards judges (<u>id</u>. at 4), opposing attorneys (<u>id</u>. at 8-10), and a court-appointed psychiatric expert (<u>id</u>. at 12-13), and he imposed sanctions on Zappin in the amount of $10,000 (<u>id</u>. at 19).  Accordingly, the statements about the Sanctions Decision are absolutely privileged.

Next, Zappin contends that the statement that he "feigned an assault in [the] courtroom" is false and defamatory.  Am. Compl. ¶24.  In fact, the Article states that "A Manhattan judge . . .

said Tuesday that the case had gotten even more 'bizarre' after the attorney 'feigned an assault'

in his courtroom." Ross Aff. Ex. A. This statement is precisely accurate: at the November 10

hearing, Justice Cooper stated that:

> [I]n a case that is already bizarre, this gets more bizarre . . . The credible
> testimony of three non-interested witnesses court employees is that there was no
> contact. If there was it was the most minimal contact possible, and the fact that
> Mr. Zappin would rise and then be shouting things to the extent arrest this man for
> assault, that he would be saying I'm going to sue you . . . the idea this would
> happen is mind-boggling . . .
>
> So, he would **feign an assault, would fabricate an assault** why would anyone
> want to be with him. How could I ask the attorneys to be in the same room when
> what is going to happen there will be allegations made, attacks made against them
> that are fabricated.

Tr. 42:18-43:14, 47:4-8 (emphasis added). This statement is therefore also privileged.

Zappin next takes issue with the alleged statement that "Anthony Zappin, 30, testified

that Paul Kurland, 69, had 'stabbed' him in the ribs . . ." Am. Compl. ¶26. In fact, the Article

states that "Anthony Zappin, 30, testified that Paul Kurland, 69, had 'stabbed' him in the ribs

**with his elbow** . . .") Ross Aff. Ex. A (emphasis added). While this statement contains a minor

factual error, it nonetheless is substantially accurate for purposes of the fair report privilege.

It appears that the quoted language from the Article mistakenly conflates the testimony of

two different witnesses. It actually was Senior Court Clerk Charlotte Williams who testified that

she saw Zappin "yelling he stabbed me with his elbow." Tr. 22:2-4. Zappin himself denied

accusing Kurland of "stabbing" him, but he was not asked if he said that Kurland stabbed him

<u>with his elbow</u>. Tr. 31:25-32:5. Zappin testified that Kurland had "grabbed the documents and

elbowed me [and] I said he's assaulting me and then I fell to the ground because my back was in

so much pain and I said he assaulted me, he assaulted me and then when I got up I asked the

court officer to intervene and arrest him." Tr. 31:20-24. He also testified that Kurland had

"ripped [the papers] out of my hands and shoved me." Tr. 32:11-12.

Notwithstanding the mixup over the source of the word "stabbed," the challenged statement is not substantially false because it would not produce "a different effect on a reader than would a report containing the precise truth." Karedes, 423 F.3d at 119 (citations omitted). The published statement that Zappin "testified that Paul Kurland, 69, had 'stabbed' him in the ribs with his elbow" is not substantially different than the literal truth that a Senior Court Clerk testified that she heard Zappin yell "he stabbed me with his elbow" and that Zappin, while denying using the word "stabbed," testified that Kurland "grabbed the documents and elbowed me [and] I said he's assaulting me and then I fell to the ground."

Indeed, misstatements more significant than this have been found insufficient to overcome the protections of §74. See Tacopina v. O'Keeffe, 2015 WL 5178405 at *6 (S.D.N.Y. Sept. 4, 2015) (article that incorrectly reported that a former client had filed an affidavit accusing attorney of abusing prescription painkillers and cocaine was substantially accurate and privileged where the client affidavit alleged abuse of painkillers and a different affidavit in a different case brought by a different former client alleged cocaine use), aff'd, 645 Fed.Appx. 7 (2d Cir. 2016) (summary order); Holy Spirit Ass'n, 49 N.Y.2d at 65-66, 424 N.Y.S.2d at 166-67 (articles protected by privilege even though they described damaging information contained in intelligence documents as "fact" and "confirmed" when documents themselves stated the information was "unevaluated" and unverified); Komarov v. Advance Magazine Publishers, Inc., 180 Misc. 2d 658, 661, 691 N.Y.S.2d 298, 301 (Sup. Ct. N.Y. Co. 1999) (article reporting that F.B.I. "asserts that [plaintiff] was [a gangster's] main money launderer and extortionist of émigré businessmen" was protected by § 74 even though the documents relied on merely stated that F.B.I. had "been advised" that plaintiff laundered money and that he "reportedly" controlled

17

extortion of émigré businessmen, and contained no allegation that he was the "main" money launderer); Alexander v. Daily News L.P., 2013 WL 6651481 (Sup. Ct. N.Y. Co. January 15, 2013) (article was substantially accurate and privileged even though it incorrectly stated that plaintiff had been charged with raping nine women, when in fact he was charged with raping two women and sexually assaulting seven others, since "[t]o the average reader, there is little difference between" the actual charges and the charges as incorrectly described in the article.)

Finally, Zappin contends that the Article falsely states that "Zappin – jabbing his finger in the air and shouting  . . ." Am. Compl. ¶27. The complete sentence is "Zappin – jabbing his finger in the air and shouting – told Cooper he was "making false statements . . . You destroyed my career and you did it intentionally." Ross Aff. Ex. A.  Zappin does not and cannot deny that he spoke those words, which are clearly reflected in the hearing transcript.  Tr. 50:10, 50:24-26. While the transcript does not indicate the volume of Zappin's voice or what gestures he used, it does make clear that he was so animated that Justice Cooper admonished him and the court officer apparently moved to restrain him:

> THE COURT: You cannot control yourself, can you.
>
> MR. ZAPPIN: I'm controlling myself.
>
> THE COURT: You are not controlling . . .
>
> MR. ZAPPIN: The court officer doesn't have to restrain me.  I'm sitting here.

Tr. 51:8-12. Even assuming only for purposes of this motion that Zappin did not actually jab his finger in the air and shout, the published statement would produce no "different effect on a reader" than the literal truth that Zappin engaged in a protracted argument with Justice Cooper that led to Justice Cooper saying "you cannot control yourself, can you" and apparently caused the court officer to move to restrain Zappin.  Accordingly, the statement is substantially accurate.

## C.  <u>The Article As A Whole Is Substantially Accurate</u>

Zappin contends that the Article is not privileged because the Daily News allegedly "failed to report that Plaintiff was not provided notice of the impromptu hearing.  It further failed to report that Plaintiff was denied an opportunity to present evidence (as a result of the lack of notice), call witnesses in his defense and cross-examine Mr. Kurland." Am. Compl. ¶31.  This argument misses the mark.

As an initial matter, Zappin's contentions about what the Daily News supposedly failed to report are not supported by the transcript.  The only witness Zappin was denied permission to call was his attorney, Mr. Schorr, and Justice Cooper explained that he was not allowing any attorneys other than Zappin and Kurland to be called as witnesses because "that would disqualify them." Tr. 27:19-28:8.  There is also nothing in the transcript to indicate that Zappin was denied an opportunity to cross-examine Kurland – rather, Justice Cooper asked Kurland if he wanted to testify, Kurland and his co-counsel stated that was not necessary, and Zappin apparently made no effort to call or cross-examine Kurland.  Tr. 42:13-17.  As for the alleged fact that Zappin was not provided notice of the hearing and was denied an opportunity to present evidence as a result, Zappin never objected or raised these points at the hearing other than one passing reference in the midst of his testimony ("I was in pain that day and that's why the doctor wrote a note and said on the front of it Mr. Zappin had a procedure and he should not engage in prolonged standing and had we been on notice today that we were going to have this little fact finding hearing I would have brought the note with me") (Tr. at 30:22-31:2).  Nothing that occurred at the hearing would have alerted the Daily News' reporter to any belief on Zappin's part that there was a serious issue as to the procedural fairness of the hearing.

More importantly, the Daily News had no obligation to report on every matter that

Zappin feels is important, and the Article is a substantially accurate report of the proceeding as a whole even though it did not include every single detail regarding what occurred.  As courts applying the privilege have recognized, a newspaper article "is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author."  Holy Spirit Ass'n, 49 N.Y.2d at 68, 424 N.Y.S.2d 165.  Moreover, there is simply no requirement that an article must report every side of the story.  Cholowsky v. Civiletti, 69 A.D.3d at 115, 887 N.Y.S.2d at 596 ("there was no requirement that the publication report the plaintiff's side of the controversy"); Alf v. Buffalo News, Inc., 100 A.D.3d 1487, 1489, 953 N.Y.S.2d 797, 799–800 (4th Dep't 2012) (same), aff'd, 21 N.Y.3d 988, 972 N.Y.S.2d 206 (2013).

Indeed, courts routinely find that newspaper articles regarding judicial proceedings and decisions are substantially accurate, and hence privileged, even if they leave out certain facts deemed critical by a plaintiff.  E.g., McDonald, 10 A.D.3d at 640, 781 N.Y.S.2d at 695 (article contained "condensed but accurate description" of a lawsuit and the court's rationale for dismissing it, and the fact that the article "failed to report that the federal court's decision granted the plaintiff leave to file an amended complaint, and that he thereafter filed an amended complaint . . . did not alter the substantially accurate character of the article"); Glendora v. Gannett Suburban Newspapers, 201 A.D.2d 620, 620, 608 N.Y.S.2d 239, 240 (2d Dep't 1994) ("the accuracy of the report was not altered merely because the article did not contain the plaintiff's 'side of the Judge's decision.' Similarly, the fact that the article did not report that the plaintiff appealed from the court's decision does not alter the accuracy of the newspaper's report on that decision").

Since the Article is a substantially accurate, albeit necessarily condensed, report on the events and outcome of the November 10 hearing, it is privileged notwithstanding Zappin's

contention that it should have reported certain additional facts.

## II.  The Complaint Must Be Dismissed Because The Challenged Statements Are Not Substantially False

Aside from the fact that the statements in suit are privileged, the Amended Complaint must be dismissed for the independent reason that the challenged statements are not substantially false and, to the extent that they reflect Judge Cooper's rulings, Zappin is collaterally estopped from challenging their accuracy.

Under New York law, it is "fundamental that truth is an absolute, unqualified defense to a civil defamation action." Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir.1986) (citation omitted).  Moreover, a libel defendant "is held only to a standard of substantial, not literal, accuracy."  Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc., 844 F.2d 955, 959 (2d Cir. 1988); see also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517-18 (1991) ("[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified'") (citation omitted); Guccione, supra (if an allegedly defamatory statement is "substantially true," a claim of libel is "legally insufficient and ... should [be] dismissed").  Just as with the §74 privilege, "an alleged libel is not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation."  Id. at 302; see also Jewell v. NYP Holdings, Inc., 23 F.Supp.2d 348, 366 (S.D.N.Y.1998) (same).

Here, for the same reasons that the challenged statements are privileged, they are not substantially false: as set forth supra, the published statements are for the most part absolutely accurate, and to the limited extent that the "stabbed" or "jabbing his finger" statements may not be precisely accurate, they nonetheless could not have produced a worse effect on the mind of the reader than the precise truth.  Since the "gist" or "sting" of the challenged statements is

21

accurate (<u>Masson</u>, <u>supra</u>) they cannot give rise to a defamation claim.

Moreover, almost all of the allegedly false statements simply state facts determined to be true by Justice Cooper in the Sanctions Decision and at the November 10, 2015 hearing.  Those statements are therefore true as a matter of law, and Zappin is collaterally estopped from relitigating the truth or falsity of those statements.  Under New York law,[7] the doctrine of collateral estoppel "precludes a party from relitigating" in a subsequent case "an issue clearly raised and decided against that party. . . ." <u>Choi v. State</u>, 74 N.Y. 2d 933, 936, 550 N.Y.S.2d 267, 269 (1989) (citations omitted); <u>see also</u> <u>Camperlengo v. Barell</u>, 78 N.Y.2d 674, 680, 578 N.Y.S.2d 504, 507 (1991). "The policies underlying [collateral estoppel] are avoiding relitigation of a decided issue and the possibility of an inconsistent result . . . ." <u>Buechel v. Bain</u>, 97 N.Y.2d 295, 303, 740 N.Y.S.2d 252, 257 (2001).

New York courts do not hesitate to dismiss defamation suits on collateral estoppel grounds where the issues raised by plaintiffs were already determined against them in prior proceedings. <u>See</u>, <u>e.g.</u>, <u>Constantine v. Teachers College</u>, 94 A.D.3d 493, 493, 940 N.Y.S.2d 75, 76 (1st Dep't 2012) (defamation claim based on allegations of plagiarism barred by collateral estoppel where finding of plagiarism had been affirmed in a prior case involving challenge to plaintiff's termination); <u>Brannon v. Mills</u>, 89 A.D.3d 536, 537, 932 N.Y.S.2d 483, 484 (1st Dep't 2011) (defamation claim barred by collateral estoppel where Civil Service Commission had previously held that plaintiff committed the alleged acts); <u>Misek-Falkoff v. American Lawyer Media, Inc.</u>, 300 A.D.2d 215, 215-16, 752 N.Y.S.2d 647, 648-49 (1st Dep't 2002) (defamation claim based on article barred by collateral estoppel where plaintiff had previously brought separate defamation

---

[7] When weighing the preclusive effect of a prior state court judgment, federal courts "are required to apply the preclusion law of the rendering state." <u>Conopco, Inc. v. Roll Int'l</u>, 231 F.3d 82, 87 (2d Cir.2000); <u>see also</u> <u>Schulz v. Williams</u>, 44 F.3d 48, 53 (2d Cir. 1994) ("a federal court must give the same preclusive effect to a state court decision as a state would give it").

case based on different article by same defendant which contained language that was "in sum and substance, the same").

Accordingly, even if the §74 privilege somehow did not apply, the Amended Complaint should nonetheless be dismissed on the separate ground that the statements in suit are substantially true.

## CONCLUSION

For the reasons stated above, the Amended Complaint should be dismissed with prejudice.


Dated: New York New York
           February 22, 2017

                              Respectfully submitted,

                              /s/ Matthew A. Leish
                              Matthew A. Leish (ML-3224)
                              Deputy General Counsel
                              Daily News, L.P.
                              4 New York Plaza
                              New York, New York 10004
                              Phone: (212) 210-2144
                              Fax: (212) 643-7843
                              mleish@nydailynews.com

                              *Attorneys for Defendant*