UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

═══════════════════════════════════════════════════════════════

ANTHONY ZAPPIN,

                Plaintiff,

-against-                              No. 16-CV-8762 (KPF)

DAILY NEWS, L.P.,
d/b/a THE DAILY NEWS,

                Defendant.

═══════════════════════════════════════════════════════════════

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DAILY NEWS' MOTION TO DISMISS

═══════════════════════════════════════════════════════════════

DAILY NEWS, L.P.
Matthew A. Leish
Deputy General Counsel
4 New York Plaza, 7th Floor
New York, NY 10004
212-210-2144

*Attorneys for Daily News, L.P.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ................................................................................................................... 1

I. Plaintiff's New Factual Assertions Should Not Be Considered .................................. 1

II. The Fair Report Privilege Bars Plaintiff's Claims ..................................................... 2

    A.   The Fair Report Privilege Applies to Public Matrimonial Proceedings .......................... 2

    B.  The Article is a Fair and True Report .............................................................. 4

    C.  The Applicability of the Privilege is a Matter of Law for the Court ............................... 6

III. The Article is Substantially True ............................................................................ 7

CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Fine v. ESPN, Inc.</u> 2013 WL 528468 (N.D.N.Y. Feb. 11, 2013) .................................................. 4

<u>Fishof v. Abady</u> 280 A.D.2d 417, 720 N.Y.S.2d 505 (1st Dep't 2001) ........................................ 6

<u>Freihofer v. Hearst Corp.</u> 65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985)........................................... 4

<u>Garcia v. Warden, Dannemora Corr. Facility</u> 795 F.2d 5 (2d Cir. 1986) .................................. 10

<u>Geiger v. Town of Greece</u> 311 Fed.Appx. 413 (2d Cir. 2009) ..................................................... 7

<u>Glantz v. Cook United, Inc.</u> 499 F. Supp. 710 (E.D.N.Y. 1979) .................................................. 4

<u>Guo v. IBM 401(k) Plus Plan</u> 95 F. Supp. 3d 512 (S.D.N.Y. 2015) ............................................ 2

<u>Huggins v. Povich</u> 1996 WL 515498 (Sup. Ct. N.Y. Co. April 19, 1996) .................................... 4

<u>Johnson v. Scully</u> 727 F.2d 222 (2d Cir.1984) .......................................................................... 10

<u>Karp v. Hill and Knowlton, Inc</u>. 631 F.Supp. 360 (S.D.N.Y. 1986) ........................................ 6-7

<u>Messinger v. Mount Sinai Med. Ctr.</u> 15 A.D.3d 189, 789 N.Y.S.2d 132 (1st Dep't 2005) ............ 5

<u>Russian American Foundation, Inc. v. Daily News, L.P.</u> 109 A.D.3d 410, 970 N.Y.S.2d 216
   (1st Dep't 2013)....................................................................................................................... 7

<u>Shiles v. News Syndicate Co.</u> 7 N.Y.2d 9, 313 N.Y.S.2d 104 (1970)................................... 2, 3, 4

<u>Southridge Capital Management, LLC. v. Lowry</u> 2003 WL 68041 (S.D.N.Y. Jan. 7,
   2003)......................................................................................................................................... 7

<u>Universal Trading & Inv. Co. v. Tymoshenko</u> 2012 WL 6186471 (S.D.N.Y. Dec. 12,
   2012)......................................................................................................................................... 2

<u>Zappin v. Comfort</u> 49 N.Y.S.3d 6, 146 A.D.2d 575 (1st Dep't 2017) .......................................... 8

**OTHER AUTHORITIES**

N.Y. Domestic Relations L. § 235 ........................................................................................... 3, 4

N.Y. Civ. Rights L. § 74 ...................................................................................................... 2, 3, 6

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................ 1

N.Y. Judiciary Law § 4 .............................................................................................................. 3

Restatement (Second) of Torts § 611 (1977)............................................................................ 6

Defendant Daily News, L.P. ("the Daily News") respectfully submits this reply memorandum of law in further support of its motion pursuant to Fed. R. Civ. Proc. 12(b)(6) to dismiss the Amended Complaint.

## ARGUMENT

Plaintiff Anthony Zappin's opposition to the Daily News' motion to dismiss is based largely on mischaracterizations of the facts and misunderstandings of the governing law. Zappin's opposition also relies in part on newly-asserted facts which are not properly before the Court.  In short, nothing in Zappin's opposition papers changes the conclusion that the claims against the Daily News must be dismissed.

## I.      Plaintiff's New Factual Assertions Should Not Be Considered

As a preliminary matter, Zappin makes numerous new factual assertions in his opposition papers that are not contained in his Amended Complaint and therefore may not properly be considered in deciding this Motion.  For example, he alleges for the first time that certain additional witnesses to the events of November 6, 2015 were "directly facing" him in the courtroom but were not called to testify by Justice Cooper (Opposition Memorandum ("Opp. Mem.") at 7-8); that in March 2016, long after the events at issue in this litigation, Justice Cooper allegedly provided Daily News reporter Barbara Ross with a copy of his "statutorily sealed custody and access decision" (Opp. Mem. at 4); and that certain alleged requests by Zappin to call witnesses at the November 6, 2015 hearing were somehow "omitted from the transcript" and that this same "problem" occurred "with many proceedings" in the case (Opp. Mem. at 17-18).  He also submits a Declaration with two new exhibits, including a hand-drawn diagram purporting to show the locations of various individuals in the courtroom on November 6, 2015.  Zappin Decl., Docket No. 30.

None of these new documents and purported facts are properly before the Court.  "'New facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered' in deciding a motion to dismiss."  <u>Universal Trading & Inv. Co. v. Tymoshenko</u>, 2012 WL 6186471 at *1 (S.D.N.Y. Dec. 12, 2012) (citation omitted); see also <u>Guo v. IBM 401(k) Plus Plan</u>, 95 F. Supp. 3d 512, 526–27 (S.D.N.Y. 2015) ("because '[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers,'" new allegations raised in opposition papers "are not properly considered in the instant Motion") (citation omitted).  Accordingly, Zappin's Declaration and the new factual assertions in his opposition Memorandum should be disregarded.

## II.    The Fair Report Privilege Bars Plaintiff's Claims

As set forth in the Daily News' initial Memorandum ("Init. Mem."), the Article is a fair and true report of the November 10, 2015 hearing and therefore is absolutely privileged under § 74 of the New York Civil Rights Law.  Zappin argues that the Article is not privileged because (1) § 74 does not apply to matrimonial proceedings, (2) the Article is not in fact a fair and true report, and (3) the question of whether a report is fair and true within the meaning of the statute is a question of fact for the jury. All of these contentions are incorrect.

### A.    The Fair Report Privilege Applies to Public Matrimonial Proceedings

Zappin's assertion that the fair report privilege does not apply to matrimonial proceedings is based entirely on an implausible reading of the New York Court of Appeals' decision in <u>Shiles v. News Syndicate Co.</u>, 7 N.Y.2d 9, 313 N.Y.S.2d 104 (1970).  In fact, the only reading of <u>Shiles</u> consistent with the facts of that case and with the clear provisions of the New York Domestic Relations Law is that <u>Shiles</u> was limited to reports of the contents of sealed <u>records</u> of matrimonial cases, and not to reports of proceedings held in open court. <u>See</u> Init. Mem. at 12-14.

Zappin contends that reading <u>Shiles</u> to apply only to filed documents would "create an anomaly in the law" in that a report on a sealed document would not be protected by the fair report privilege, while a report based on an attorney or litigant reading from the same document in open court would be privileged.  Opp. Mem. at 21.  It bears noting that these are not the facts at issue here, as there is no contention that the November 10, 2015 hearing included any discussion of any sealed documents.  Indeed, nothing at the November 10 hearing related to any sensitive matrimonial or child custody matters at all.

More importantly, there is nothing anomalous about the hypothetical scenario proposed by Zappin – to the contrary, that scenario is entirely consistent with the provisions of the Domestic Relations Law.  Specifically, § 235(1) of the Domestic Relations Law provides that certain documents in matrimonial actions "shall" be sealed, while both § 235(2) of the Domestic Relations Law and N.Y. Judiciary Law § 4 provide that the public "may" be excluded from matrimonial proceedings at the discretion of the judge.  Thus, if a sealed document is to be discussed at a public matrimonial proceeding, a judge may – but is not required to - exclude the public, thereby avoiding the "anomaly" posited by Zappin.  Of course, Justice Cooper did not exclude the press and the public from the November 10 hearing, nor did Zappin ask him to do so despite being aware that reporters were present in the courtroom.  <u>See</u> Init. Mem. at 14.

While <u>Shiles</u> does state somewhat imprecisely that § 74 does not apply to the publication of a report of matrimonial proceedings, all of the cases the Court cited for that proposition involved reports of sealed matrimonial records, not reports of public matrimonial proceedings.  <u>See</u> Init. Mem. at 13-14.   Moreover, the facts before the court in <u>Shiles</u> involved a report about filed <u>documents</u>, and the decision cites DRL § 235(1) and repeatedly refers to "records."  <u>Id</u>. at 13.

3

Zappin also claims that "the holdings [sic] of the Shiles court has repeatedly been cited as good law" (Opp. Mem. at 20), but in two of the three cases he cites, the only reference to Shiles is made in passing, in dicta, without any discussion whatsoever, let alone any assessment of whether Shiles is limited to reports based on sealed documents. Fine v. ESPN, Inc., 2013 WL 528468 n.6 (N.D.N.Y. Feb. 11, 2013); Huggins v. Povich, 1996 WL 515498 at *9 (Sup. Ct. N.Y. Co. April 19, 1996). In the third case cited by Zappin, Glantz v. Cook United, Inc., 499 F. Supp. 710 (E.D.N.Y. 1979), the court distinguished Shiles because Glantz was not a matrimonial case and noted that the Shiles ruling was based on the fact that "New York law prohibited the copying or inspection of the records of matrimonial proceedings by anyone other than the parties or their counsel." Id. at 715 (emphasis added). This is entirely consistent with the Court of Appeals' own subsequent description of Shiles as a case in which "this court held that one who had published and disseminated the contents of the records of matrimonial proceedings" could not assert the fair report privilege. Freihofer v. Hearst Corp., 65 N.Y.2d 135, 141, 490 N.Y.S.2d 735, 740 (1985) (emphasis added). Accordingly, the fair report privilege applies here.

### B.    The Article is a Fair and True Report

Zappin's contention that the Article is not a fair and true report is similarly flawed.  He incorrectly claims that the Daily News has somehow conceded that "at least two of the seven sentences in the November 10 Article are 'inaccurate' and/or constitute a 'factual error.'"  Opp. Mem. at 22. This is simply false. The Daily News has acknowledged one misattribution – involving the source of the "stabbed . . . with his elbow" comment – which is not material and which does not render the Article substantially inaccurate. Init. Mem. at 16-17. The other alleged error cited by Zappin is not an error at all. Rather, Zappin is referring to the Daily News' acknowledgment that the transcript of the November 10 hearing does not contain any explicit

confirmation of the statement in the Article that Zappin at one point was "jabbing his finger in the air and shouting" – something that is not surprising, since a transcript cannot indicate gestures or the volume of someone's voice.  Init. Mem. at 18.  To be clear, the Daily News does not concede that this statement is false, and should this case survive this motion to dismiss, the Daily News will demonstrate that the statement is true.  The point is that, even if solely for purposes of this motion it were assumed that the statement was false, it nonetheless would produce no "different effect on a reader" than the literal truth that Zappin berated Justice Cooper in open court and became so animated that Justice Cooper admonished him and the court officer moved to restrain him – something that Zappin does not deny.  Init. Mem. at 18.

Zappin also continues to assert that the Article is not fair and true because it supposedly "omits numerous and substantial facts that would have caused any reasonable reader to question the truthfulness of Defendant's statements and the legitimacy of the November 10, 2015 evidentiary hearing . . . ."  Opp. Mem. at 23.  Most of these alleged "omissions" were previously addressed in the Daily News' initial Memorandum at 19-21.   Zappin now adds the new allegation that the Daily News failed to report that "Justice Cooper select[ed] and question[ed] his own witnesses as 'court witnesses' that he interviewed *ex parte* prior to the hearing without providing notice to the parties" (Opp. Mem. at 23), but he does not explain how this fact would have caused a different opinion in the mind of any reader, and in fact there was nothing improper about Justice Cooper's actions.  Messinger v. Mount Sinai Med. Ctr., 15 A.D.3d 189, 189, 789 N.Y.S.2d 132, 133 (1st Dep't 2005) (a "trial court has broad discretion to control the courtroom [and] elicit and clarify testimony") (citation omitted).

In addition, a newspaper has no obligation to publish every fact that a plaintiff deems relevant or to include a plaintiff's side of the story.  Init. Mem. at 19-20.  Zappin attempts to

distinguish the cases relied on by the Daily News by citing comment f to section 611 of the Restatement (Second) of Torts for the supposed proposition that coverage of an adversarial proceeding – as opposed to coverage of a written decision – "is different and imposes additional obligations on a newspaper covering such an event."  Opp. Mem. at 23.  However, the cited language from the Restatement comes in the context of a discussion of how the privilege applies when a newspaper "publishes from day to day the report of a judicial proceeding" and then "after reporting derogatory parts, fail[s] to publish the further proceedings that tend to vindicate the person defamed."  Restatement (Second) of Torts § 611 (1977).  That is not the situation here, where the Article reported on a discrete, one-day hearing.

Moreover, Zappin cites no New York cases following the Restatement on this point, and he fails to note that New York interprets its fair report privilege far more broadly than does the Restatement.  To cite just one example, comment e to section 611 of the Restatement states that the fair report privilege applies only after some judicial action has been taken, and does not apply to complaints prior to such judicial action; but New York law is clear that the privilege <u>does</u> apply to complaints and other initial pleadings from the moment they are filed.  <u>E.g.</u>, <u>Fishof v. Abady</u>, 280 A.D.2d 417, 417, 720 N.Y.S.2d 505, 506 (1st Dep't 2001) (fair report privilege applied where plaintiff's attorney distributed allegedly defamatory complaint to the media).  In sum, the Article is a fair and true report and is therefore privileged.

### C.    The Applicability of the Privilege is a Matter of Law for the Court

Zappin next contends that the question of whether the Article is a fair and true report under §74 cannot be resolved against him on a motion to dismiss.  Opp. Mem. at 24-5.  But the law is clear that "it is for the Court, in the first instance, to decide whether a publication is protected under section 74 as a fair report. . . ."  <u>Karp v. Hill and Knowlton, Inc.</u>, 631 F.Supp.

360, 363 (S.D.N.Y. 1986).  Here, for the reasons set forth infra and in the Daily News' initial

Memorandum, the Article is substantially accurate, and thus fair and true, as a matter of law.

Courts routinely determine that a report is fair and true and grant motions to dismiss based on

§74, even where the plaintiff argues that the report in question is not substantially accurate for

one reason or another.  See cases cited in Daily News' initial Memorandum at 10n; see also, e.g.,

Geiger v. Town of Greece, 311 Fed.Appx. 413 (2d Cir. 2009); Southridge Capital Management,

LLC. v. Lowry, 2003 WL 68041 (S.D.N.Y. Jan. 7, 2003); Russian American Foundation, Inc. v.

Daily News, L.P., 109 A.D.3d 410, 970 N.Y.S.2d 216 (1st Dep't 2013).   It therefore is entirely

proper for the Court to apply §74 and grant the Daily News' motion to dismiss here.

## III.    The Article is Substantially True

In addition to being privileged, the Article is not actionable because the statements in suit

are not substantially false.  See Init. Mem. at 21-23.  Once again, Zappin's arguments to the

contrary are either factually incorrect or legally unpersuasive.

First, Zappin again incorrectly claims that the Daily News has conceded that two

statements in suit are false.  Opp. Mem. at 11-14.  As explained at 4-5, supra, the Daily News has

conceded no such thing – it has acknowledged only that the source of the "stabbed" statement

was misattributed while explaining that this error does not render the Article substantially false.

Second, Zappin contends that the Article misrepresented the reason that Justice Cooper

imposed $10,000 in sanctions.  According to Zappin, the sanction was imposed for "filing a

confidential complaint with the Office of Professional Medical Conduct" against a court-

appointed expert and not for misusing his law license.  Opp. Mem. at 14.  Once again, this is

simply not true.  The Sanctions Decision expressly states that Zappin had "done everything in his

power to undermine the legal process and use his law license as a tool to threaten, bully, and

intimidate" (Ross Aff. Ex. B at 3) and goes on to provide example after example of such

misconduct.[1]  The Sanctions Decision expressly states that the attorney for the child had asked

Justice Cooper to impose sanctions due to Zappin's conduct with respect to the expert "and his

overall misconduct throughout the pendency of the divorce action."  Id. at p. 3 (emphasis added).

And in imposing sanctions, Justice Cooper found that Zappin's disciplinary complaint against

the expert was made in bad faith and concluded that

> Plaintiff's misconduct exhibited with regard to the OPMC complaint is not an
> isolated incident. Regrettably, it is but one instance in a pattern of improper
> behavior. Although the hope was that plaintiff would heed the court's admonitions
> and represent himself according to the dictates of his profession, that has not
> happened. Under these circumstances, where warnings have had no effect on
> plaintiff's conduct, it is incumbent - for the integrity of the judicial process, as
> well as for the protection of the other litigants and the child - that penalties be
> imposed . . . Accordingly, plaintiff is sanctioned $10,000, with half to be paid to
> the [attorney for the child] to compensate her for the cost of bringing the two
> motions that are the subject of this decision, and half to be paid to the Lawyers
> Fund for Client Protection to penalize plaintiff for conduct that has wasted
> judicial resources and otherwise adversely impacted the administration of justice.

Id. at p.15-16.  Accordingly, the statement in the Article regarding the reasons that sanctions

were imposed is entirely accurate.

Third, Zappin contends that the supposed statement that he "feigned an assault in [the]

courtroom" is false and that he is not collaterally estopped from challenging this finding by

Justice Cooper because he supposedly was denied due process at the November 10 hearing.

Opp. Mem. at 15.  It bears repeating that the Daily News did not state that Zappin "feigned an

---

[1] Zappin asks the Court to "take judicial notice" of the supposed fact that the examples of his
misconduct cited by Justice Cooper were "largely misrepresented or fabricated by Justice
Cooper."  Opp. Mem. at 14-15.  There is no basis for the Court to do any such thing, particularly
since the First Department has affirmed the Sanctions Decision and held that Justice Cooper's
decision was "amply supported by the record" which "establishes that [Zappin] engaged in
unprofessional, outrageous and malicious conduct on multiple occasions" and "exhibited a
pattern of bad faith conduct throughout the proceedings despite repeated warnings not to do so."
Zappin v. Comfort, 49 N.Y.S.3d 6, 146 A.D.2d 575 (1st Dep't 2017).

assault" – rather, it accurately reported that <u>Justice Cooper concluded</u> that Zappin had feigned an assault.  <u>See</u> Article ("A Manhattan judge . . . said Tuesday that the case had gotten even more 'bizarre' after the attorney 'feigned an assault' in his courtroom.")  The statement that Justice Cooper made such a finding is absolutely true, as Zappin concedes (Opp. Mem. at 15), and the claim based on this statement therefore fails <u>regardless</u> of any collateral estoppel argument.

As for collateral estoppel, while Zappin is correct that this doctrine applies only if the underlying proceedings comported with due process, his claim that he was denied due process at the November 10 hearing is baseless.  Zappin did not assert any due process-type objections at the hearing, nor did he raise any issues regarding his alleged lack of notice aside from a passing statement that he would have brought a copy of his doctor's note if he had been on notice of the hearing.  Tr. at 30:25-31:2.  As for his alleged inability to call witnesses, his assertion that he "requested to call Mr. Kurland and the unnamed court officers as witnesses, but was denied the request" (Opp. Mem. at 17) is not reflected in the transcript, and his new assertion that these requests were somehow omitted from the transcript and that this was a recurring problem in his divorce proceeding (Opp. Mem. at 17-18) is not properly before the Court.  <u>See</u> p. 1-2, <u>supra</u>.  And as for his alleged inability to present evidence, the only evidence he says he would have presented had he been on notice is a copy of his doctor's note supposedly confirming his "back surgery" (Opp. Mem. at 17).  However, the note – which he now provides as an exhibit to his Declaration – does not say that he had surgery.  Rather, it simply says "Patient underwent procedure.  No prolonged standing."  Zappin Decl. Ex. B.  Zappin was not prejudiced by the absence of the note because he fully described the "procedure" (which involved injections, not surgery) during his testimony.  <u>See</u> Tr. at 30:17-31:10.  And contrary to his assertion, Justice Cooper did not "misrepresent" the contents of the note.  <u>Id</u>. at 13:4-5 ("THE COURT: There is

no note that said you had surgery.  The note said you couldn't stand for a long time.")

Finally, Zappin's contention that Justice Cooper violated his due process rights by acting as "prosecutor" and questioning witnesses (Opp. Mem. at 18) is without merit, both because Zappin never objected to Justice Cooper's conduct and because there was nothing improper about it.  <u>Garcia v. Warden</u>, 795 F.2d 5, 7 (2d Cir. 1986) ("extensive questioning by a trial judge does not necessarily equate with unfairness . . . Moreover, as a general rule, New York appellate courts will not even consider claims of excessive interference by a trial judge unless timely objections were addressed to the judge's course of conduct in such a manner as to put him on notice that his conduct was felt to be improper"); <u>see also</u> <u>Johnson v. Scully</u>, 727 F.2d 222, 226–27 (2d Cir.1984) (trial judge's conduct did not violate due process even though his questioning of witnesses was "far more extensive than what is normally appropriate for a trial judge endeavoring to expedite proceedings and assist the jury's understanding").

## <u>CONCLUSION</u>

For the reasons stated above and in the Daily News' initial moving papers, the Amended Complaint should be dismissed with prejudice.

Dated: New York New York
         May 15, 2017

Respectfully submitted,

/s/ Matthew A. Leish
Matthew A. Leish (ML-3224)
Deputy General Counsel
Daily News, L.P.
4 New York Plaza
New York, New York 10004
Phone: (212) 210-2144
Fax: (212) 643-7843
mleish@nydailynews.com

*Attorneys for Defendant*

10